## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **JENNIFER TEMPLE,** | § | **CIVIL ACTION** |
| | § | |
| **Plaintiff,** | § | **NO. 4:09-CV-03214** |
| | § | |
| **VS.** | § | |
| | § | |
| **TEXAS A&M UNIVERSITY;** | § | **JURY TRIAL DEMANDED** |
| **SOFIA FUENTES, Individually and in her Official Capacity as Academic Advisor in the Department of General Academic Programs at Texas A&M University; DR. SALLYE HENDERSON, Individually and in her Official Capacity as Associate Dena for the Department of General Academics at Texas A&M University; DR. KRISS BOYD, Individually and in her Official Capacity as Dean of the Department of General Academics at Texas A&M; DR. MARY BROUSSARD, Individually and in her Official Capacity as Associate Provost for Undergraduate Studies and Student Ombudsman at Texas A&M; DR. JOHN M. GUNN, Individually and in his Official Capacity as Dean of Undergraduate Programs and Associate Provost for Academic Services at Texas A&M; DR. R. BOWEN LOFTIN, Individually and in his Official Capacity as Interim President of Texas A&M University,** | § | |
| | § | |
| **Defendants.** | | |

---

## PLAINTIFF JENNIFER TEMPLE'S FIRST AMENDED COMPLAINT

---

TO THE HONORABLE JUDGE ATLAS:

COMES NOW Plaintiff, JENNIFER TEMPLE, and brings this First Amended Complaint against TEXAS A&M UNIVERSITY ("Texas A&M"), SOFIA FUENTES ("Ms. Fuentes"), DR. MARY BROUSSARD ("Dr. Broussard"), DR. SALLYE HENDERSON ("Dr. Henderson"), DR. KRISS BOYD ("Dr. Boyd"), DR. JOHN MARTYN GUNN ("Dr. Gunn"), and DR. R. BOWEN LOFTIN ("Dr. Loftin"), (collectively, the "Defendants") and would respectfully show unto the Court the following

## I.
## <u>PARTIES</u>

1.   Plaintiff, Jennifer Temple, is an individual who is a citizen of the United States, domiciled in the country of Trinidad.  Plaintiff currently resides in Travis County, Texas.

2.   Defendant, Texas A&M University, is an institution of higher education pursuant to Section 61.003 of the Texas Education Code.  Texas A&M has previously been served in this matter.

3.   Defendant, Sofia Fuentes, is a natural person above the age of majority, who at the time of the events in question was an employee of Texas A&M University. Defendant Sofia Fuentes's address is unknown at this time.

4.   Defendant, Dr. Mary Broussard, is a natural person above the age of majority, who at the time of the events in question was an employee of Texas A&M University. Dr. Mary Broussard may be served at her place of employment at Texas A&M University, 203 Jack K. Williams Administration Building, College Station, Texas 77843, or wherever she may be found.

5.   Defendant, Dr. Sallye Henderson, is a natural person above the age of majority, who at the time of the events in question was an employee of Texas A&M University. Defendant Dr.

Sallye Henderson may be served with process at may be served at 1101 Carmel Ct, College Station, Texas 77845, or wherever she may be found.

6.      Defendant, Dr. Kriss Boyd, is a natural person above the age of majority, who at the time of the events in question was an employee of Texas A&M University. Defendant Dr. Kriss Boyd may be served at her place of employment at Texas A&M University, 300 Hotard Hall, College Station, TX  77843 or wherever she may be found

7.      Defendant, Dr. John M. Gunn, is a natural person above the age of majority, who at the time of the events in question was an employee of Texas A&M University. Defendant Dr. John M. Gunn may be served with process at the place of his employment, 203 Jack K. Williams Admin. Building, 1125 TAMU, College Station, Texas 77845, or wherever he may be found.

8.      Defendant Dr. R. Bowen Loftin, is a natural person above the age of majority, who at the time of the events in question was an employee of the Texas A&M University System, and currently serves as Interim President of Texas A&M University, College Station.  Dr. Loftin may be served with process at his place of employment, the Office of the President, 1246 Texas A&M, Texas A&M University, College Station, TX 77843-1246, or wherever he may be found.

## II.
## JURISDICTION

9.    The United States District Court for the Southern District of Texas has jurisdiction over this action under 28 U.S.C. § 1331, in that this lawsuit is brought pursuant to the Constitution and laws of the United States of America, including the Fourteenth Amendment to the Constitution of the United States, Section 1,   42 U.S.C. § 1983, and 20 U.S.C. 1232g, as hereinafter more fully appears.

10.   Plaintiff also invokes the Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 with respect to the state law claims against Defendants as the state law violations form part of the same case or controversy.

## III.
## VENUE

11.   Venue is proper in the Southern District of Texas under 28 U.S.C. § 1391 (b) because Defendant Texas A&M resides in this District and is subject to service of process in this District, and because all or a substantial part of the events giving rise to this action occurred in Brazos County, Texas, in the Southern District of Texas.

## IV.
## CONDITIONS PRECEDENT

12.   All conditions precedent have been performed or have occurred.

## V.
## JURY DEMAND

13.   Plaintiff has previously requested trial by jury on all issues pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VI.
## FACTS

14.   Plaintiff, Jennifer Temple ("Ms. Temple"), moved to Texas from Trinidad in the fall of 2007, to enroll as a freshman at Texas A&M.  With the advice and guidance of an academic advisor, Ms. Temple enrolled in several difficult classes, including Calculus and Computer Programming.

15.   The challenging curriculum was rendered almost impossible by the inability of the Professors and the Teachers' Assistants, who also taught the classes, to speak English.  Plaintiff attempted to complete the classes successfully, despite the substantial learning barrier caused by

the inability of the Professors and Teachers' Assistants to communicate effectively to the students. However, by late October of 2007, it became apparent that a favorable outcome was unlikely.

16.     Accordingly, Plaintiff determined that the best decision would be to exercise a "Q-drop"[1] in both the Calculus and Computer Programming courses. This action would allow Plaintiff to withdraw from the courses, without receiving the penalty of a failing grade.

17.     Plaintiff met with Sofia Fuentes, a Texas A&M advisor in the Department of General Academics, on or about November 2, 2007. Despite Ms. Fuentes' lack of knowledge regarding Plaintiff's circumstances, she warned Plaintiff that exercising a Q-drop would jeopardize Plaintiff's ability to maintain health insurance coverage under her parents' insurance policy. Ms. Fuentes, with deliberate indifference to plaintiff's situation, advised Plaintiff to remain enrolled in the classes, let her grades in the courses fall to D's or F's, and take advantage of the First Year Grade Exclusion Policy (the "FYGE Policy").[2]

18.     Having no reason to doubt Ms. Fuentes's guidance, Plaintiff ceased attending classes, as advised, so that she would be eligible to exercise the Grade Exclusion Policy. Because of the faulty advice from Ms. Fuentes, Plaintiff was then awarded two F's and one D.

19.     Ms. Fuentes advised Plaintiff not to Q-drop, without any attempt to determine whether the insurance related concerns applied to Plaintiff's situation. In fact, the Q-drop would

---

[1] A "Q-Drop" is a procedure offered by Texas A&M through which a Texas A&M student may, during the first 50 days of classes in a regular fall or spring semester, drop a course without the penalty of a failing grade. The course appears on the student's transcript with the designation of "Q" rather than a letter grade; the hours are not included in the calculation of the student's GPR. *See* TEXAS A&M UNIVERSITY STUDENT RULE 1.16, http://student-rules.Texas A&M.edu (2009).

[2] A currently enrolled Texas A&M undergraduate student may elect to exclude from his/her undergraduate degree and cumulative GPR calculation grades of D, F, or U. All courses chosen for first year grade exclusion remain on the official transcript and designated on the transcript as excluded. TEXAS A&M RULE 10.10.1.

have had no impact on Plaintiff's insurance. Furthermore, Ms. Fuentes failed to explain to Plaintiff that the grade exclusion policy would not be recognized outside of the A&M system.

20.     Plaintiff has now decided to pursue a course of study that is not offered by Texas A&M and has sought admission at the University of Texas ("UT"). However, Plaintiff has been denied admission to UT because of the detrimental effect of the two F's and one D on her Grade Performance Ratio (GPR).

21.     This denial of admission to UT is directly attributable to the improper advice given by Texas A&M advisor Sofia Fuentes and its subsequent effect on Plaintiff's GPR. Had her advisor permitted her to Q-drop the classes, Plaintiff's GPR would not include the Calculus or Computer Science Courses.  Defendants' conduct has resulted, not only in the deprivation of Plaintiff's ability to attend the school and the educational program of her choosing, but has decreased her future earning capacity.  It has been made clear that the only way Ms. Temple would be allowed to transfer to UT is if the "excluded" grades were removed from her transcript; this could be accomplished with a Q-drop.

22.     After learning that the exclusion was responsible for UT's decision to deny her admission, Plaintiff has made repeated efforts to resolve the error on her student record, created by Ms. Fuentes's faulty advice and counseling, through Texas A&M's administrative channels. Plaintiff contacted the then Assistant Dean of General Studies, Dr. Sallye Henderson, who took no action to resolve the situation.   Similarly, Dr. Kriss Boyd took no action to resolve the situation.

23.     Plaintiff also met with Dr. Mary Broussard, who agreed that, with the approval of Martin Gunn, Dean of Undergraduate Programs, she would send a letter directly to UT addressing and explaining the grade issue. Although representations were made to Plaintiff that a

letter was sent to UT on her behalf, as of the date of this Amended Complaint, to the best of Ms.

Temple's knowledge, no such letter has been sent to UT.

24.     Plaintiff has sought resolution of this matter from several avenues within the Texas

A&M system, including the filing of a formal request to amend her records with Texas A&M on

or about March 5, 2009. Despite her repeated requests that the grades be changed from

"excluded" grades to Q-dropped grades, so that she may receive admission to another university,

Texas A&M officials have refused to remedy this situation.

25.     Since the events in question, Texas A&M has acknowledged the misleading nature of

the rules surrounding the FYGE Policy.  The version of the FYGE Policy in force at the time

contained the following language:

> While excluded courses will not be factored into Texas A&M University GPR, students
> should be aware that employers, professional schools and graduate schools may recalculate
> the GPR to include such grades.

This version of the FYGE Policy fails to reference any repercussions to a student who seeks to

transfer to another undergraduate institution.

26.     However, Effective June 18, 2009, in a blatant admission by Texas A&M that the

FYGE Policy was misleading, Student Rule 10.1 was amended to read as follows:

> While excluded courses will not be factored into Texas A&M University GPR, students
> should be aware that employers, professional schools, **(including professional schools that
> are a part of Texas A&M University), undergraduate schools to which A&M students
> may seek to transfer,** and graduate schools may recalculate the GPR to include such grades.[3]

---

[3] TEXAS A&M STUDENT RULES, http://student-rules.tamu.edu/rule10 (2009).

## VII.
## PLAINTIFF'S CAUSES OF ACTION

27.     Plaintiff brings claims against Defendants for violating her liberty and property interests in receiving an education, as well as her Due Process rights to adequate notice and hearing procedures, and for the negligence exercised in advising.

### A. CONSTITUTION OF THE UNITED STATES OF AMERICA, CONSTITUTION OF THE STATE OF TEXAS AND 42 U.S.C. § 1983.

28.     Plaintiff incorporates herein by reference all preceding paragraphs.

29.     Plaintiff has a recognized liberty and property interest in her ability to obtain an education, which is within the purview of the Fourteenth Amendment of the United States Constitution and Article 1, Section 19 of the Texas Constitution.  Defendants, through the Texas A&M policy of inadequate advising which was exercised with conscious indifference, and the failure to remedy the problem of inadequate advising, have deprived Plaintiff of her constitutionally protected rights without due process of law.

30.     A special relationship existed between Plaintiff and Defendants based on the combination of several contributing factors including her enrollment as a student and payment of tuition to Texas A&M.  This special relationship gave rise to a duty on the part of Texas A&M, its administrators, and its staff to assist Jennifer Temple in the furtherance of her academic career.

### Sofia Fuentes

31.     At all times relevant to the aforementioned facts, Defendant, Sofia Fuentes, a Texas A&M Academic Advisor, was an employee of Texas A&M.  Ms. Fuentes was acting in her individual and official capacities under the color of the laws of the State of Texas at the time the

events giving rise to this action occurred. Ms. Fuentes's deliberate indifference to Plaintiff's situation has prevented Plaintiff from obtaining admission to another institution, and has ultimately deprived Plaintiff of her ability to pursue the education that she desires. The deprivation of Plaintiff's right to acquire knowledge, without justification or due process of law, is a violation of 42 U.S.C. § 1983 and the Constitutions of the United States and the State of Texas.

32.     Ms. Fuentes, while acting under the color of the laws of the State of Texas, subjected Jennifer Temple to the deprivation of various rights, privileges, or immunities secured by the Constitution and laws of the United States of America, including those arising under the Fourteenth Amendment Due Process Clause.  The acts or omissions of Defendants resulted in the violations of Jennifer Temple's constitutional rights, and the resulting damage to her academic career and the resulting stress and emotional damage.

33.     Specifically, Ms. Fuentes acted with deliberate indifference to her duty to provide the guidance and advice necessary to ensure the academic success of Jennifer Temple by providing her with faulty advice and incorrect information regarding the impact of her academic decisions.

34.     As a direct result of Ms. Fuentes's breach of the duties owed to Jennifer Temple, she has suffered and continues to suffer injuries and damages including, but not limited to inability to continue her education as planned and emotional pain and anguish.

### Dr. Sallye Henderson

35.     At all times relevant to the aforementioned facts, Defendant, Dr. Henderson, former Associate Dean of the Department of General Academics, was an employee of Texas A&M,. Dr. Henderson was acting in her individual and official capacities under the color of the laws of the State of Texas at the time the events giving rise to this action occurred.

36.     Through its undergraduate advisor, Texas A&M presented "grade exclusion" as the appropriate and most viable method of withdrawing from a class, with the smallest potential repercussions to a student. At no time was Plaintiff advised that her ability to transfer to another university could be damaged by the exclusion.  Despite her position as Associate Dean of the Department of General Academics, Dr. Henderson failed to insure that Plaintiff or other students received correct, accurate advising.

37.     Plaintiff submitted a formal request to Texas A&M seeking to amend her transcript and explaining her situation, as well as the reckless, misleading advice that she was given. Plaintiff's request was denied, without providing a hearing or other grade-review process, in direct violation of Plaintiff's due process rights.  The failure to provide Plaintiff with adequate advice regarding her education, and failure to conduct a grade review, with adequate process, has prevented Plaintiff from pursuing her education at UT and deprived her of her constitutionally protected right to obtain knowledge.

38.     This conduct was bolstered by the refusal of Texas A&M and its administrators, including Dr. Mary Broussard, and Dr. Sallye Henderson, to remedy the problems created for Jennifer Temple and demonstrating their approval of the policy of faulty and reckless advising followed by Ms. Fuentes.

39.     Dr. Henderson's promulgation of Texas A&M's policies and procedures of inadequate advising created an impossible situation for Jennifer Temple because ineffective actions were taken to provide the advice and guidance necessary to students, or to adequately train academic advisors to provide the advice and guidance necessary to assist students with their academic careers.

40.    Dr. Henderson had knowledge of the reliance placed on her, and the academic advisors in her department, to provide guidance and advice to students in pursuit of their academic careers.  However, these procedures were ignored and Jennifer Temple was provided with faulty advice, exercised with deliberate indifference toward her situation, which has been detrimental to her academic progress and caused her to suffer irreparable harm.

41.    Furthermore, Dr. Henderson violated Plaintiff's rights to be free from deprivation of liberty and property interests without due process of law, when she failed to give adequate consideration to Plaintiff's grade appeal.

42.    The conduct of Texas A&M, its employees, and administrators amounts to deprivation of various rights, privileges, or immunities secured by the Constitution and laws of the United States of America, including those arising under the Fourteenth Amendment Due Process Clause, and the Constitution of Texas.  The acts or omissions of Defendants resulted in irreparable harm, including the violations of Jennifer Temple's constitutional rights, damage to her academic career, future earning potential, stress and emotional damage.

43.    Specifically, Dr. Henderson, acted with conscious indifference and reckless disregard toward the constitutionally protected rights of Jennifer Temple, by overseeing a department where advisors failed to provide the guidance and accurate advice necessary to ensure her academic success. This policy of faulty and reckless guidance was furthered by the refusal to adequately consider Ms. Temple's grade appeal, or to otherwise remedy the problems created by the FYGE Policy.

44.    As a direct result of the breach of the duties owed to Jennifer Temple, she has suffered and continues to suffer injuries and irreparable damages including, but not limited to

inability to continue her education as planned, loss of future earning capacity, and emotional pain and anguish.

45.     No amount of damages or other remedy available at law is sufficient to adequately compensate Ms. Temple for the harm caused by Defendants' conduct.    Considering the irreparable harm caused by Defendants, a remedy in equity is also warranted. The irreparable harmed caused by the deprivation of federally protected rights can be addressed by a change of Ms. Temple's transcript so that the "excluded" grades are replaced with "Q-drops," which would have no bearing on her grade point average.

46.     Dr. Henderson should be required to take any steps necessary to insure that the excluded grades be immediately and permanently removed from Plaintiff's transcript, and that such grades be replaced with "Q."    The provision of this remedy would not disserve the interest of the general public.

### Dr. Kriss Boyd

47.     At all times relevant to the aforementioned facts, Defendant, Dr. Kriss Boyd, Dean of the Department of General Academics, was an employee of Texas A&M, and was acting in her individual and official capacities under the color of the laws of the State of Texas at the time the events giving rise to this action occurred.

48.     Through its undergraduate advisor, Texas A&M presented "grade exclusion" as the appropriate and most viable method of withdrawing from a class, with the smallest potential repercussions to a student. At no time was Plaintiff advised that her ability to transfer to another university could be damaged by the exclusion.  Despite her position as Dean of the Department of General Academics, Dr. Boyd failed to insure that Plaintiff or other students received correct, accurate advising.

49.     Plaintiff submitted a formal request to Texas A&M seeking to amend her transcript and explaining her situation, as well as the reckless, misleading advice that she was given. Plaintiff's request was denied, without providing a hearing or other grade-review process, in direct violation of Plaintiff's due process rights.  The failure to provide Plaintiff with adequate advice regarding her education, and failure to conduct a grade review, with adequate process, has prevented Plaintiff from pursuing her education at UT and deprived her of her constitutionally protected right to obtain knowledge.

50.     Dr. Boyd's promulgation of Texas A&M's policies and procedures of inadequate advising created an impossible situation for Jennifer Temple because ineffective actions were taken to provide the advice and guidance necessary to students, or to adequately train academic advisors to provide the advice and guidance necessary to assist students with their academic careers.

51.     Dr. Boyd had knowledge of the reliance placed on her, and the academic advisors in her department, to provide guidance and advice to students in pursuit of their academic careers. However, these procedures were ignored and Jennifer Temple was provided with faulty advice, exercised with deliberate indifference toward her situation, which has been detrimental to her academic progress and caused her to suffer irreparable harm.

52.     Furthermore, Defendants violated Plaintiff's rights to be free from deprivation of liberty and property interests, without due process of law, when inadequate consideration was given to Plaintiff's grade appeal.

53.     The conduct of Texas A&M, its employees, and administrators amounts to deprivation of various rights, privileges, or immunities secured by the Constitution and laws of the United States of America, including those arising under the Fourteenth Amendment Due

Process Clause, and the Constitution of Texas.  The acts or omissions of Defendants resulted in irreparable harm, including the violations of Jennifer Temple's constitutional rights, damage to her academic career, future earning potential, stress and emotional damage.

54.    Specifically, Dr. Boyd, acted with conscious indifference and reckless disregard toward the constitutionally protected rights of Jennifer Temple, by overseeing a department where advisors failed to provide the guidance and accurate advice necessary to ensure her academic success.  This policy of faulty and reckless guidance was furthered by the refusal to adequately consider Ms. Temple's grade appeal, or to otherwise remedy the problems created by the FYGE Policy.

55.    As a direct result of the breach of the duties owed to Jennifer Temple, she has suffered and continues to suffer injuries and irreparable damages including, but not limited to inability to continue her education as planned, loss of future earning capacity, and emotional pain and anguish.

56.    No amount of damages or other remedy available at law is sufficient to adequately compensate Ms. Temple for the harm caused by Defendants' conduct.   Considering the irreparable harm caused by Defendants, a remedy in equity is also warranted. The irreparable harmed caused by the deprivation of federally protected rights can be addressed by a change of Ms. Temple's transcript so that the "excluded" grades are replaced with "Q-drops," which would have no bearing on her grade point average.

57.    Dr. Boyd should be required to take any steps necessary to insure that the excluded grades be immediately and permanently removed from Plaintiff's transcript, and that such grades be replaced with "Q." The provision of this remedy would not disserve the interest of the general public.

### Dr. Mary Broussard

58.      At all times relevant to the aforementioned facts, Defendant, Dr. Mary Broussard, Associate Provost for Undergraduate Studies, was an employee of Texas A&M and was acting in her individual and official capacities under the color of the laws of the State of Texas at the time the events giving rise to this action occurred.

59.      Through its undergraduate advisor, Texas A&M presented "grade exclusion" as the appropriate and most viable method of withdrawing from a class, with the smallest potential repercussions to a student. At no time did Defendants advise Plaintiff that her ability to transfer to another university could be damaged by the exclusion.  Despite her position as Associate Provost, Dr. Broussard failed to insure that Plaintiff or other students received correct, accurate advising.

60.      Plaintiff submitted a formal request to Texas A&M seeking to amend her transcript and explaining her situation, as well as the reckless, misleading advice that she was given. Plaintiff's request was denied, without providing a hearing or other grade-review process, in direct violation of Plaintiff's due process rights.  The failure to provide Plaintiff with adequate advice regarding her education, and failure to conduct a grade review, with adequate process, has prevented Plaintiff from pursuing her education at UT and deprived her of her constitutionally protected right to obtain knowledge.

61.      This conduct was bolstered by the refusal of Texas A&M and its administrators, including Dr. Broussard, and Dr. Henderson, to remedy the problems created for Jennifer Temple and demonstrating their approval of the policy of faulty and reckless advising followed by Ms.

Fuentes.  Moreover, Ms. Temple has been further harmed by Dr. Broussard's promise to provide a letter regarding the policy to UT, but failing to do so.[4]

62.     Dr. Broussard's promulgation of Texas A&M's policies and procedures of inadequate advising created an impossible situation for Jennifer Temple because ineffective actions were taken to provide the advice and guidance necessary to students, or to adequately train academic advisors to provide the advice and guidance necessary to assist students with their academic careers.

63.     Dr. Broussard had knowledge of the reliance placed on her and the academic advisors, to provide guidance and advice to students in pursuit of their academic careers.  However, these procedures were ignored and Jennifer Temple was provided with faulty advice, exercised with deliberate indifference toward her situation, which has been detrimental to her academic progress and caused her to suffer irreparable harm.  Dr. Broussard did nothing to abate this harm.

64.     Furthermore, Defendants violated Plaintiff's rights to be free from deprivation of liberty and property interests, without due process of law, when inadequate consideration was given to Plaintiff's grade appeal.

65.     The conduct of Texas A&M, its employees, and administrators, amounts to deprivation of various rights, privileges, or immunities secured by the Constitution and laws of the United States of America, including those arising under the Fourteenth Amendment Due Process Clause, and the Constitution of Texas.  The acts or omissions of Defendants resulted in irreparable harm, including the violations of Jennifer Temple's constitutional rights, damage to her academic career, future earning potential, stress and emotional damage.

---

[4] To the best of Plaintiff's knowledge and belief, the promised letter has not been sent.

66.     Specifically, Dr. Broussard, acted with conscious indifference and reckless disregard toward the constitutionally protected rights of Jennifer Temple, by promulgating an advising policy where advisors failed to provide the guidance and accurate advice necessary to ensure her academic success.   This policy of faulty and reckless guidance was furthered by the refusal to adequately consider Ms. Temple's grade appeal, or to otherwise remedy the problems created by the FYGE Policy.

67.     As a direct result of the breach of the duties owed to Jennifer Temple, she has suffered and continues to suffer injuries and irreparable damages including, but not limited to inability to continue her education as planned, loss of future earning capacity, and emotional pain and anguish.

68.     No amount of damages or other remedy available at law is sufficient to adequately compensate Ms. Temple for the harm caused by Defendants' conduct.   Considering the irreparable harm caused by Defendants, a remedy in equity is also warranted. The irreparable harm caused by the deprivation of federally protected rights can be addressed by a change of Ms. Temple's transcript so that the "excluded" grades are replaced with "Q-drops," which would have no bearing on her grade point average.

69.     Dr. Broussard should be required to take any steps necessary to insure that the excluded grades be immediately and permanently removed from Plaintiff's transcript, and that such grades be replaced with "Q."  The provision of this remedy would not disserve the interest of the general public.

**Dr. John M. Gunn**

70.     At all times relevant to the aforementioned facts, Defendant, Dr. John M. Gunn, Dean of Undergraduate Programs and Associate Provost for Academic Services,  was an employee of

Texas A&M and was acting in her individual and official capacities under the color of the laws of the State of Texas at the time the events giving rise to this action occurred.

71.     Through its undergraduate advisor, Texas A&M presented "grade exclusion" as the appropriate and most viable method of withdrawing from a class, with the smallest potential repercussions to a student. At no time did Defendants advise Plaintiff that her ability to transfer to another university could be damaged by the exclusion.  Despite his position as Dean and Associate Provost, Dr. Gunn failed to insure that Plaintiff or other students received correct, accurate advising.

72.     Plaintiff submitted a formal request to Texas A&M seeking to amend her transcript and explaining her situation, as well as the reckless, misleading advice that she was given. Plaintiff's request was denied, without providing a hearing or other grade-review process, in direct violation of Plaintiff's due process rights.  The failure to provide Plaintiff with adequate advice regarding her education, and failure to conduct a grade review, with adequate process, has prevented Plaintiff from pursuing her education at UT and deprived her of her constitutionally protected right to obtain knowledge.

73.     Dr. Gunn's promulgation of Texas A&M's policies and procedures of inadequate advising created an impossible situation for Jennifer Temple because ineffective actions were taken to provide the advice and guidance necessary to students, or to adequately train academic advisors to provide the advice and guidance necessary to assist students with their academic careers.

74.     Dr. Gunn had knowledge of the reliance placed on him and the academic advisors, to provide guidance and advice to students in pursuit of their academic careers.  However, these procedures were ignored and Jennifer Temple was provided with faulty advice, exercised with

deliberate indifference toward her situation, which has been detrimental to her academic progress and caused her to suffer irreparable harm. Dr. Gunn did nothing to abate this harm.

75.     Furthermore, Defendants violated Plaintiff's rights to be free from deprivation of liberty and property interests, without due process of law, when inadequate consideration was given to Plaintiff's grade appeal.

76.     The conduct of Texas A&M, its employees, and administrators amounts to deprivation of various rights, privileges, or immunities secured by the Constitution and laws of the United States of America, including those arising under the Fourteenth Amendment Due Process Clause, and the Constitution of Texas. The acts or omissions of Defendants resulted in irreparable harm, including the violations of Jennifer Temple's constitutional rights, damage to her academic career, future earning potential, stress and emotional damage.

77.     Specifically, Dr. Gunn, acted with conscious indifference and reckless disregard toward the constitutionally protected rights of Jennifer Temple, by promulgating an advising policy where advisors failed to provide the guidance and accurate advice necessary to ensure her academic success.   This policy of faulty and reckless guidance was furthered by the refusal to adequately consider Ms. Temple's grade appeal, or to otherwise remedy the problems created by the FYGE Policy.

78.     As a direct result of the breach of the duties owed to Jennifer Temple, she has suffered and continues to suffer injuries and irreparable damages including, but not limited to inability to continue her education as planned, loss of future earning capacity, and emotional pain and anguish.

79.     No amount of damages or other remedy available at law is sufficient to adequately compensate Ms. Temple for the harm caused by Defendants' conduct.   Considering the

irreparable harm caused by Defendants, a remedy in equity is also warranted. The irreparable harmed caused by the deprivation of federally protected rights can be addressed by a change of Ms. Temple's transcript so that the "excluded" grades are replaced with "Q-drops," which would have no bearing on her grade point average.

80.    Dr. Gunn should be required to take any steps necessary to insure that the excluded grades be immediately and permanently removed from Plaintiff's transcript, and that such grades be replaced with "Q." The provision of this remedy would not disserve the interest of the general public.

### President R. Bowen Loftin

81.    Through its undergraduate advisor, Texas A&M presented "grade exclusion" as the appropriate and most viable method of withdrawing from a class, with the smallest potential repercussions to a student. At no time did Defendants advise Plaintiff that her ability to transfer to another university could be damaged by the exclusion.

82.    Plaintiff submitted a formal request to Texas A&M seeking to amend her transcript and explaining her situation, as well as the reckless, misleading advice that she was given. Plaintiff's request was denied, without providing a hearing or other grade-review process, in direct violation of Plaintiff's due process rights.

83.    The failure to provide Plaintiff with adequate advice regarding her education, and failure to conduct a grade review, with adequate process, has prevented Plaintiff from pursuing her education at UT and deprived her of her constitutionally protected right to obtain knowledge.

84.    This conduct was bolstered by the refusal of Texas A&M and its administrators, including Dr. Mary Broussard, and Dr. Sallye Henderson, to remedy the problems created for

Jennifer Temple and demonstrating their approval of the policy of faulty and reckless advising followed by Ms. Fuentes.

85.     Texas A&M's policies and procedures created an impossible situation for Jennifer Temple because ineffective actions were taken to provide the advice and guidance necessary to students, or to adequately train academic advisors to provide the advice and guidance necessary to assist students with their academic careers.

86.     Texas A&M had knowledge of the reliance placed on it, and its academic advisors to provide guidance and advice to students in pursuit of their academic careers.  However, these procedures were ignored and Jennifer Temple was provided with faulty advice, exercised with deliberate indifference toward her situation, which has been detrimental to her academic progress and caused her to suffer irreparable harm.

87.     Furthermore, Defendants violated Plaintiff's rights to be free from deprivation of liberty and property interests, without due process of law, when inadequate consideration was given to Plaintiff's grade appeal.

88.     The conduct of Texas A&M, its employees, and administrators amounts to deprivation of various rights, privileges, or immunities secured by the Constitution and laws of the United States of America, including those arising under the Fourteenth Amendment Due Process Clause, and the Constitution of Texas.  The acts or omissions of Defendants resulted in irreparable harm, including the violations of Jennifer Temple's constitutional rights, damage to her academic career, future earning potential, stress and emotional damage.

89.     Specifically, Texas A&M, its employees, and administrators, acted with conscious indifference and reckless disregard toward the constitutionally protected rights of Jennifer Temple, by failing to provide the guidance and advice necessary to ensure her academic success

and providing her with faulty advice and incorrect information regarding the impact of her academic decision.   This policy of faulty and reckless guidance was furthered by the refusal to adequately consider Ms. Temple's grade appeal, or to otherwise remedy the problems created by the FYGE Policy.

90.    As a direct result of the breach of the duties owed to Jennifer Temple, she has suffered and continues to suffer injuries and irreparable damages including, but not limited to inability to continue her education as planned, loss of future earning capacity, and emotional pain and anguish.

91.    No amount of damages or other remedy available at law is sufficient to adequately compensate Ms. Temple for the harm caused by Defendants' conduct.   Considering the irreparable harm caused by Defendants, a remedy in equity is also warranted. The irreparable harmed caused by the deprivation of federally protected rights can be addressed by a change of Ms. Temple's transcript so that the "excluded" grades are replaced with "Q-drops," which would have no bearing on her grade point average.

92.    Dr. Loftin is an employee of Texas A&M and who acts in his individual and official capacities under the color of the laws of the State of Texas.

93.    Dr. Loftin should be required to order that the excluded grades be immediately and permanently removed from Plaintiff's transcript, and that such grades be replaced with "Q." The provision of this remedy would not disserve the interest of the general public.

## Texas A&M

94.     Through its undergraduate advisor, Texas A&M presented "grade exclusion" as the appropriate and most viable method of withdrawing from a class, with the smallest potential repercussions to a student. At no time did Defendants advise Plaintiff that her ability to transfer to another university could be damaged by the exclusion.

95.     Plaintiff submitted a formal request to Texas A&M seeking to amend her transcript and explaining her situation, as well as the reckless, misleading advice that she was given. Plaintiff's request was denied, without providing a hearing or other grade-review process, in direct violation of Plaintiff's due process rights.

96.     The failure to provide Plaintiff with adequate advice regarding her education, and failure to conduct a grade review, with adequate process, has prevented Plaintiff from pursuing her education at UT and deprived her of her constitutionally protected right to obtain knowledge.

97.     This conduct was bolstered by the refusal of Texas A&M and its administrators, including Dr. Mary Broussard, and Dr. Sallye Henderson, to remedy the problems created for Jennifer Temple and demonstrating their approval of the policy of faulty and reckless advising followed by Ms. Fuentes.

98.     Texas A&M's policies and procedures created an impossible situation for Jennifer Temple because ineffective actions were taken to provide the advice and guidance necessary to students, or to adequately train academic advisors to provide the advice and guidance necessary to assist students with their academic careers.

99.     Texas A&M had knowledge of the reliance placed on it, and its academic advisors to provide guidance and advice to students in pursuit of their academic careers.  However, these procedures were ignored and Jennifer Temple was provided with faulty advice, exercised with

deliberate indifference toward her situation, which has been detrimental to her academic progress and caused her to suffer irreparable harm.

100.     Furthermore, Defendants violated Plaintiff's rights to be free from deprivation of liberty and property interests, without due process of law, when inadequate consideration was given to Plaintiff's grade appeal.

101.     The conduct of Texas A&M, its employees, and administrators amounts to deprivation of various rights, privileges, or immunities secured by the Constitution and laws of the United States of America, including those arising under the Fourteenth Amendment Due Process Clause, and the Constitution of Texas.  The acts or omissions of Defendants resulted in irreparable harm, including the violations of Jennifer Temple's constitutional rights, damage to her academic career, future earning potential, stress and emotional damage.

102.     Specifically, Texas A&M, its employees, and administrators, acted with conscious indifference and reckless disregard toward the constitutionally protected rights of Jennifer Temple, by failing to provide the guidance and advice necessary to ensure her academic success and providing her with faulty advice and incorrect information regarding the impact of her academic decision.   This policy of faulty and reckless guidance was furthered by the refusal to adequately consider Ms. Temple's grade appeal, or to otherwise remedy the problems created by the FYGE Policy.

103.     As a direct result of the breach of the duties owed to Jennifer Temple, she has suffered and continues to suffer injuries and irreparable damages including, but not limited to inability to continue her education as planned, loss of future earning capacity, and emotional pain and anguish.

104.    No amount of damages or other remedy available at law is sufficient to adequately compensate Ms. Temple for the harm caused by Defendants' conduct.   Considering the irreparable harm caused by Defendants, a remedy in equity is also warranted. The irreparable harmed caused by the deprivation of federally protected rights can be addressed by a change of Ms. Temple's transcript so that the "excluded" grades are replaced with "Q-drops," which would have no bearing on her grade point average.

105.    Texas A&M should be required to order that the excluded grades be immediately and permanently removed from Plaintiff's transcript, and that such grades be replaced with "Q." The provision of this remedy would not disserve the interest of the general public.

**B.    FAMILY EDUCATION RIGHTS AND PRIVACY ACT ("FERPA") 20 U.S.C. § 1232(G)**

106.    Plaintiff incorporates herein by reference all preceding paragraphs.

107.    In addition to the deprivation of her liberty and property interest in obtaining an education, the refusal of Defendants to grant Plaintiff consideration and a hearing of her record appeal is violation of the Family Education Rights and Privacy Act ("FERPA).

108.    As permitted by FERPA, Plaintiff and her mother have made multiple requests to Defendants that her academic transcript, which contained information rendered inaccurate and misleading by Ms. Fuentes's advice, be amended.  Plaintiff has also sent written requests to Mary Broussard, and to Texas A&M, through its Office of General Counsel.

109.    Defendants have refused to amend the record, and have not held a hearing to consider the amendment, as required by FERPA.  Defendants denial of the process required by FERPA is a violation of Plaintiff's constitutional rights, the rights secured under 42 U.S.C. § 1983, and a violation of a student's right to her academic record, protected by FERPA.

110.    The harm caused by Defendants' denial of Plaintiff's right to due process in the

consideration of her grade appeal is irreparable. Defendants Dr. R. Bowen Loftin, Sofia Fuentes, Dr. Mary Broussard, Dr. Sallye Henderson, Dr. Kriss Boyd, Dr. Martyn Gunn, should be required to take any and all actions necessary to provide the process mandated by FERPA.

## C.   **NEGLIGENCE**

111.   Plaintiff incorporates herein by reference all preceding paragraphs.

### **Sofia Fuentes**

112.   Sofia Fuentes failed to discharge her duties as an advisor of Texas A&M. Sofia Fuentes, individually, owed a duty of reasonable care to Plaintiff to provide her the guidance and advising needed to further her education.  Sofia Fuentes breached this duty of care by failing to perform the ministerial task of providing Plaintiff with accurate and prudent advice regarding the decision to drop or exclude classed, and the implications such exclusion may have on her grade point average, and ability to transfer to a different institution. As a direct and proximate result of these failures, Jennifer Temple was coerced into a course of action which detrimentally affected her grade point average and has prevented her desired transfer to another institution.

113.   Sofia Fuentes, individually, and in her capacity as an employee of Texas A&M University and an advisor to Plaintiff, owed a duty to provide her with the advising necessary to further that education.  Sofia Fuentes knew that Plaintiff depended and relied on her and the information provided, in order to make important decisions regarding her education. Despite this knowledge, Sofia Fuentes failed to adequately advise Plaintiff or provide her with the correct information that she needed to further her education.  Plaintiff has suffered irreparable harm as a result of Ms. Fuentes's negligence.

### Dr. Sallye Henderson

114.    Dr. Henderson failed to discharge her duties as an Associate Dean of Texas A&M. Dr. Henderson, individually, owed a duty of reasonable care to Plaintiff to provide her the guidance and advising needed to further her education.

115.    Dr. Henderson breached this duty of care by failing to train Department of General Academics advisors to provide Plaintiff with accurate and prudent advice regarding the decision to drop or exclude classed, and the implications such exclusion may have on her grade point average, and ability to transfer to a different institution. As a direct and proximate result of these failures, Jennifer Temple was coerced into a course of action which detrimentally affected her grade point average and has prevented her transfer to another institution.

116.    Dr. Henderson, individually, and in her capacity as an employee of Texas A&M University and an Associate Dean in Plaintiff's department, owed a duty to provide her with the advising and other assistance necessary to further that education.  Dr. Henderson knew that Texas A&M depended and relied on them and the information provided, in order to make important decisions regarding her education. Despite this knowledge, Dr. Henderson failed to adequately train Sofia Fuentes to advise Plaintiff or provide her with the correct information that she needed to further her education.

117.    Furthermore, Dr. Henderson failed to provide Plaintiff with adequate consideration of her grade appeal or other assistance needed to resolve the irreparable harm caused by Sofia Fuentes's faulty advice.  Plaintiff has suffered irreparable harm as a result of Dr. Henderson's negligence.

### Dr. Kriss Boyd

118.   Dr. Boyd failed to discharge her duties as a Dean of Texas A&M. Dr. Boyd, individually, owed a duty of reasonable care to Plaintiff to provide her the guidance and advising needed to further her education.

119.   Dr. Boyd breached this duty of care by failing to train Department of General Academics advisors to provide Plaintiff with accurate and prudent advice regarding the decision to drop or exclude classed, and the implications such exclusion may have on her grade point average, and ability to transfer to a different institution. As a direct and proximate result of these failures, Jennifer Temple was coerced into a course of action which detrimentally affected her grade point average and has prevented her desired transfer to another institution.

120.   Dr. Boyd, individually, and in her capacity as an employee of Texas A&M University and Dean of the Department of General Academics, owed a duty to provide Plaintiff with the advising and other assistance necessary to further that education.  Dr. Boyd knew that Texas A&M depended and relied on them and the information provided, in order to make important decisions regarding her education. Despite this knowledge, Dr. Boyd failed to adequately train Sofia Fuentes to advise Plaintiff or provide her with the correct information that she needed to further her education.   Plaintiff has suffered irreparable harm as a result of Dr. Boyd's negligence.

### Dr. Mary Broussard

121.   Dr. Broussard failed to discharge her duties as an Associate Provost for Undergraduate Studies. Dr. Broussard, individually, owed a duty of reasonable care to Plaintiff to provide her the guidance and advising needed to further her education.

122.   Dr. Broussard breached this duty of care by failing to insure that the Department of

General Academics adequately trained its advisors to provide students with accurate and prudent advice regarding the decision to drop or exclude classed, and the implications such exclusion may have on her grade point average, and ability to transfer to a different institution. As a direct and proximate result of these failures, Jennifer Temple was coerced into a course of action which detrimentally affected her grade point average and has prevented her desired transfer to another institution.

123.     Dr. Broussard, individually, and in her capacity as an employee of Texas A&M University and an Associate Provost, owed a duty to provide her with the assistance necessary to further that education.  Dr. Broussard knew that Texas A&M students depended and relied on advisors, in order to make important decisions regarding her education. Despite this knowledge, Dr. Broussard failed to adequately train Sofia Fuentes to advise Plaintiff or provide her with the correct information that she needed to further her education.

124.     Furthermore, by failing to send a letter to UT admissions as requested by Plaintiff, Dr. Broussard failed to provide Plaintiff with the assistance needed to resolve the irreparable harm caused by Sofia Fuentes's faulty advice.  Plaintiff has suffered irreparable harm as a result of Dr. Broussard's negligence.

### Dr. John M. Gunn

125.     Dr. Gunn failed to discharge his duties as Dean of Undergraduate Programs and Associate Provost for Academic Services. Dr. Gunn, individually, owed a duty of reasonable care to Plaintiff to provide her the guidance and advising needed to further her education.

126.     Dr. Gunn breached this duty of care by failing to insure that the Department of General Academics adequately trained its advisors to provide students with accurate and prudent advice regarding the decision to drop or exclude classed, the implications such exclusion may

have on her grade point average, and ability to transfer to a different institution. As a direct and proximate result of these failures, Jennifer Temple was coerced into a course of action which detrimentally affected her grade point average and has prevented her desired transfer to another institution. Plaintiff has suffered irreparable harm as a result of Dr. Gunn's negligence.

## VIII.
## DAMAGES

127.    Defendants' wrongful conduct resulted in injury to Plaintiff. As the proximate result of Defendants' wrongful actions, Plaintiff has suffered an irreparable injury for which she has no adequate remedy at law; accordingly, a remedy in equity is warranted. The requested relief, that the "excluded" courses on Plaintiff's transcript be replaced with "Q-drops," will not adversely affect public policy or the public interest.

128.    Additionally, she has suffered pecuniary loss, loss of future earning capacity, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

## IX.
## ATTORNEYS' FEES

129.    It was necessary for Plaintiff to secure the service of the undersigned attorneys to represent her interest in this action. Therefore, Plaintiff is entitled to recover attorneys' fees from Texas A&M pursuant to 42 U.S.C. § 1988.

## X.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Jennifer Temple, requests that upon final hearing, she have and take judgment against Sofia Fuentes, Dr. Sallye Henderson, Dr. Mary Broussard, Dr. Kriss Boyd, Dr. John M. Gunn, Dr. R. Bowen Loftin, and Texas A&M University for the following:

(1) Equitable relief, by the issuance of an injunction requiring a change of grades from "excluded" to "Q-drop;

(2) actual damages;

(3) the provision of a hearing and consideration of her record challenge, without deprivation of due process, as required by the Constitutions of the United States and Texas, and FERPA;

(4) prejudgment and post-judgment interest at the maximum rate allowable by law;

(5) attorneys fees;

(6) costs of court or litigation expenses incurred in this cause; and

(7) such other and further relief, both at law and in equity, to which Plaintiff may justly show herself entitled.


Respectfully submitted,

**WEST, WEBB, ALLBRITTON & GENTRY, P.C.**
1515 Emerald Plaza
College Station, Texas  77845-1515
Telephone ~ (979) 694-7000
Facsimile ~ (979) 694-8000

*Original pleading bearing original signature maintained in the offices of West, Webb, Allbritton & Gentry, P.C.*


By: _____/Gaines West_____
        GAINES WEST
        ATTORNEY IN CHARGE
        Texas State Bar No.  21197500
        Southern District No.: 5327
        E-mail: gaines.west@westwebblaw.com

        ATTORNEYS    FOR    PLAINTIFF    JENNIFER
        TEMPLE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of Plaintiff Jennifer Temple's First Amended Complaint and Plaintiff Jennifer Temple's Response to Defendant Texas A & M University's Motion to Dismiss and Brief in Support was served by certified mail, return receipt requested and via the *CM/ECF system* on November 18, 2009, to:

Daniel C. Perkins                                   CM, RRR 7009-0820-0001-2903-1844
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548


*Original pleading bearing original signature maintained in the offices of West, Webb, Allbritton & Gentry, P.C.*


  /Gaines West
   Gaines West